FILED

2013 Aug-12  PM 02:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| SANDRA GOREE, o/b/o J.D.S., | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| vs. | ) | Civil Action No. CV-11-S-2573-S |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Sandra Goree commenced this action on July 14, 2011, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge, and denying the claim she asserted on behalf of her son, J.D.S. ("claimant"), for child supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th

Cir. 1983).

Claimant, who was ten years old at the time of the administrative decision, alleged childhood disability beginning on November 6, 2006, due to asthma and attention deficit hyperactivity disorder (ADHD), and, indeed, the ALJ found these to be severe impairments.[1]   Even so, the ALJ found that claimant did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled one of the listed impairments.[2]   Claimant contends that this decision was neither supported by substantial evidence nor in accordance with applicable legal standards.   Specifically, claimant argues that the ALJ erred by:  (1) failing to find that his asthma met and/or equaled the criteria of Listing 103.03; (2) failing to obtain an updated medical opinion regarding medical equivalency; and (3) improperly misconstruing and dismissing the opinions of claimant's teachers when evaluating whether his impairments functionally equaled the Listing.  Upon careful consideration of the record, the court concludes that claimant's contentions are not correct, and the ALJ's decision is due to be affirmed.

**A.    Listing 103.03**

Listing 103.03 covers childhood asthma.  Claimant argues that he meets Listing 103.03B, which requires asthma attacks of a specified severity and frequency.  Listing

---

[1] Tr. 19.

[2] Tr. 19-26.

103.03B requires asthma with:

> B. Attacks (*as defined in 3.00C*), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. pt. 404, subpt. P, app. 1, § 103.03B (emphasis supplied).   Listing 3.00C

defines "attacks of asthma" as:

> prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting.  Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours.

20 C.F.R. pt. 404, subpt. P, app. 1, § 3.00C.

Although claimant asserts the ALJ "failed to support his finding that [his] asthma was not severe enough to meet or equal the asthma listing,"[3] claimant is the one who bears the burden of providing medical records showing that he meets a Listing. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002).  Claimant's brief cites to a number of visits to doctors and hospital emergency rooms, but he has failed to convincingly demonstrate that any of the visits meet the definition of an "attack of asthma" in Listing 3.00C.

Of the thirteen visits cited by claimant, two clearly do not meet the Listing

---

[3] Doc. no. 8 (claimant's brief), at 7 (alteration supplied).

definition of an asthma attack.  On March 9, 2006, claimant presented for treatment of a fever.  His breathing sounds were clear, with no increased effort of breathing.[4] On January 29, 2008, claimant presented with complaints of a cold.  His lung exam was normal.[5]  During the remaining eleven visits, it does not appear the plaintiff received intensive treatment, such as IV bronchodilator or antibiotic therapy.  It also is clear that claimant did not receive "prolonged inhalational bronchodilator therapy in a hospital or emergency room setting" during most of those eleven visits.  Even if the court were to assume that all visits to the emergency room satisfy the Listing 3.00C definition of an asthma attack, claimant still would not have the requisite number of attacks during any twelve-month period.  In short, claimant has not shown that he had the requisite number of asthma attacks — as that term is defined by Listing 3.00C — during any twelve-month period to satisfy the requirements of Listing 103.03.

## B.    Medical Expert

Claimant next argues that the additional medical evidence submitted after the December 15, 2006, medical opinion from the state agency reviewing physician required the ALJ to utilize a medical expert.  However, as the Commissioner points out in her brief, a medical expert is required by SSR 96-6p only when, in the opinion

---

[4] Tr. 204-10.

[5] Tr. 269.

of the ALJ, the additional medical evidence might change the state agency doctor's opinion.[6]  As discussed above, the additional records do not suggest the claimant met or equaled Listing 103.03.  Consequently, there was no need for the ALJ to employ a medical expert to evaluate those records.  The ALJ's decision was supported by substantial evidence, even without consideration of any additional medical opinions.

## C.    Functional Equivalence and Teacher Opinions

If a child's impairments do not meet or medically equal a listed impairment, the ALJ must then determine if the child's impairments are functionally equivalent in severity to a listed impairment. 20 C.F.R. §§ 416.924(d), 416.926a(a).  For the child's impairments to functionally equal a listed impairment, the child's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).  A "marked" limitation is one which "interferes seriously" with a claimant's abilities in a domain. 20 C.F.R. § 416.926a(e).  It is more than "moderate" but less than "extreme." *Id*.  A claimant's impairment can also functionally equal a listed impairment if it results in an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(d).  An "extreme" limitation is one that "interferes very seriously with [a claimant's] ability to initiate, sustain, or complete activities."  *Id*. (alteration supplied).  The ALJ considers the child's

---

[6] *See* doc. no. 9 (Commissioner's Brief), at 10.

functioning in terms of six domains:   (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

In the present case, the ALJ considered claimant's functioning in these six domains.  Claimant's argues that the ALJ failed to properly consider the opinions of his teachers with regard to three of the domains.[7]

Claimant argues the ALJ failed to properly consider the assessment of his first grade teacher, Ms. McClinskey, in the domain of "acquiring and using information." The ALJ made the following finding concerning that domain:

> On December 4, 2006, Judy McClinskey, one of the claimant's teachers, completed a teacher questionnaire on the claimant.  Ms. McClinskey indicated that although the claimant had obvious problems in reading, understanding and writing, the claimant only had slight problems in comprehending oral instructions; in understanding vocabulary; in doing mathematical problems; in participating in class discussions and in providing oral explanations (Exhibit 4E).   On March 13, 2009, Ms. Lawson, also one of the claimant's teachers, reported that despite some noticeable problems, the claimant was a very bright young man (Exhibits 9E and 11E).  In a child function report, the claimant's mother noted that the claimant's speech could be understood most of the time.  She also indicated that the claimant was able to deliver phone messages; to repeat stories; to tell jokes; to use sentences beginning with because/what if/ should have been and to communicate with others (Exhibit 2E).[8]

---

[7] *See* doc. no. 8 (claimant's brief), at 13-14.

[8] Tr. 22.

Claimant's argument is based upon Ms. McClinskey's indication of "an obvious problem" in five of ten areas covered by the form.[9]  Ms. McClinskey indicated "a slight problem" in the other five areas.  The form asked the teacher to rate claimant's functioning on a scale of one to five.  The five levels were:

- No problem

- A slight problem

- An obvious problem

- A serious problem

- A very serious problem.

Because the regulations define a marked limitation as one that "interferes seriously" with a claimant's abilities in a domain, Ms. McClinskey's form supports the ALJ's finding on this domain, as she indicated that claimant had less than serious problems in all ten of the activities contained on the form.  Indications on the teacher questionnaire of an "obvious problem" would represent a less than serious problem, and thus less than a "marked limitation" under the Listing's definition.  Because Ms. McClinskey indicated the claimant had a less than serious problem in all ten areas assessed, the ALJ's finding on this domain is supported by substantial evidence.

In the Domain of "attending and completing tasks," the ALJ found that claimant

---

[9] Tr. 122.

had a less than marked limitation for the following reasons:

> On December 4, 2006, Ms. McClinskey, a teacher of the claimant, reported that even though the claimant possessed obvious difficulties in maintaining focus, the claimant only had slight problems in paying attention, sustaining attention while playing, carrying out instructions, organizing his things and completing work/assignments (Exhibit 4E). In a child function report, the claimant's mother indicated that the claimant was able to finish what he started; to complete his homework and to complete his chores most of the time (Exhibit 2E).[10]

Claimant argues that the ALJ did not consider the two areas in which the plaintiff had serious problems: *i.e.,* changing from one activity to another without being disruptive; and working at reasonable pace/finishing on time.  It is true that the ALJ did not specifically mention these two activities.  However, these were only two of the thirteen activities rated in this domain.  With only two of thirteen activities being rated at a level equal to "marked," the ALJ's finding on this domain is supported by substantial evidence.

In the domain of "caring for himself," the ALJ found that claimant had less than a marked limitation for the following reasons:

> On December 4, 2006, Ms. McClinskey noted in a teacher questionnaire that although the claimant encountered problems in handling frustration appropriately, asserting his emotional needs, responding appropriately to his own mood changes and in coping skills, the claimant only experienced slight to no difficulties in being patient, caring for his personal hygiene, caring for his physical needs, taking his medications, using good judgment and knowing when to ask for help (Exhibit 4E).  In

---

[10] Tr. 23.

a child function report, the claimant's mother reported that the claimant was able to use a zipper, button clothes, tie shoelaces, bathe himself, brush his teeth, comb/wash his hair, use eating utensils, put away his toys/clothes and help around the house (Exhibit 2E).[11]

Claimant argues that the ALJ's finding was not reasonable because Ms. McClinskey indicated the claimant has a serious problem in handling frustration appropriately, and obvious problems in three other activities.[12]  The form completed by Ms. McClinskey shows a less than serious problem in nine of the ten areas assessed.  With only one of ten activities being rated at a level qual to "marked," the ALJ's finding on this domain is supported by substantial evidence.

Claimant also argues the ALJ did not properly consider the statement provided by his third grade teacher, Ms. Lawson.  That statement contains the following:

I have noticed his behavior since he entered my classroom.  He seems to always fidget with his fingers or arms.  He bites his nails constantly in class and has a difficult time staying on task.  His eyes constantly wonder [sic] around in circular motion, which is very uncommon to me. He is a very bright young man, but there are few/ [sic] very noticeable problems.[13]

Claimant argues that the ALJ "summarized the letter from Ms. Lawson by stating 'on March 13, 2009, Ms. Lawson, the claimant's elementary school teacher, reported that

---

[11] Tr. 25.

[12] *See* claimant's brief, at 13.

[13] Tr. 163 (alterations supplied).

the claimant was a 'very bright young man'. . ."[14]  This is somewhat of a distortion of the ALJ's discussion of Ms. Lawson's letter.  The ALJ referred to Ms. Lawson's statement in his consideration of statements made by the claimant's mother.   In context, the ALJ's reference to Ms. Lawson's statement is as follows:

> The claimant's mother also insisted that the claimant requires special instruction in reading and in performing mathematical calculations. However, on March 13, 2009, Ms. Lawson, the claimant's elementary school teacher, reported that the claimant was a "very bright young man." (Exhibits 9E and 11E).[15]

Ms. Lawson's reference to the claimant being a "very bright young man" was contrasted with the claimant's mother's statements about his need for special instruction in reading and math.  In addition, earlier in his decision, the ALJ had discussed Ms. Lawson's statement as follows: "On March 13, 2009, Ms. Lawson, also one of the claimant's teachers, reported that *despite some noticeable problems*, the claimant was a very bright young man."[16]   Therefore, the ALJ did discuss Ms. Lawson's notation of several obvious problems.  While claimant may disagree with the weight the ALJ gave to Ms. Lawson's statement that the claimant was a "very bright young man," it is misleading to imply that the ALJ ignored other portions of Ms. Lawson's letter.

---

[14] *See* claimant's brief, at 14.

[15] Tr. 20.

[16] Tr. 22 (emphasis supplied).

Although claimant argues that the ALJ relied on only portions of the opinions of claimant's teachers, it appears that the ALJ was acting as a fact-finder and weighing the evidence.  While he did not discuss every single piece of evidence, the ALJ did reference evidence from Ms. McClinskey showing that the plaintiff had limitations in some areas.  Most of these limitations were indicated to be "obvious problems," and thus, were less than serious/marked.  Ms. McClinskey found the plaintiff had a serious problem in only a small percentage of the activities in the three domains discussed in claimant's brief.  (Acquiring and using information:  0 of 10;  Attending and completing tasks:  2 of 10; and Caring for himself:  1 of 10.)  The ALJ did not ignore evidence supporting claimant's case.  To the contrary, the ALJ's findings were supported by substantial evidence.

**D.     Conclusion and Order**

In summary, the court concludes that the ALJ's decision regarding claimant's disability was supported by substantial evidence and in accordance with applicable legal standards.  Accordingly, the decision of the Commissioner is AFFIRMED.  Costs are taxed to claimant.  The Clerk is directed to close this file.

DONE this 12th day of August, 2013.

_____
United States District Judge

11